**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| RHONDA LOVE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:13-CV-01617-RWS |
| BANK OF AMERICA, N.A., | : | |
| | : | |
| Defendant. | : | |
| | : | |

**ORDER**

This case comes before the Court on Plaintiff Rhonda Love's Motion for Emergency Temporary Restraining Order and/or Preliminary Injunction [2] and Defendant Bank of America, N.A.'s Motions to Dismiss [4], [11]. After reviewing the record, the Court enters the following Order.

**Background**

On February 24, 2009, Plaintiff purchased property located at 3136 Mercer University Drive, Atlanta, Georgia 30341 ("Property"). That same day, Plaintiff executed a promissory note to obtain a mortgage loan from United Wholesale Mortgage.  (Am. Compl., Dkt. [7] ¶ 3.) To secure the loan, Plaintiff executed a Security Deed in favor of Mortgage Electronic Registration Systems,

Inc. ("MERS"). (Security Deed, Dkt. [7-2] at 1.) On December 11, 2010, Plaintiff agreed to a modification of her mortgage with BAC Home Loans Servicing, the servicer of the loan at the time. (Dkt. [7-3] at 15.) On January 18, 2012, MERS assigned the Security Deed to Defendant. (Assignment, Dkt. [7-2] at 10.)

The bulk of Plaintiff's allegations rely on a series of letters that she says demonstrate that she received another modification, or at least was in the process of negotiating a modification, when Defendant foreclosed. Plaintiff includes with her Amended Complaint a letter she wrote to her attorney on June 6, 2013, explaining part of her payment history. (Dkt. [7-5] at 12.) Plaintiff states that after the December 2010 modification, she was laid off from her job at Emory University in February of 2011. (Id.) At that point, Plaintiff alleges that she had difficulty maintaining her regular monthly payments and paying late fees. (Id.) Plaintiff further alleges that at the time she was laid off she believed she was working with a representative of Defendant to receive another loan modification. (Am. Compl., Dkt. [7] ¶ 18.) She alleges that Defendant's customer service representative told her that Defendant was "basically obligated to help [her]." (Dkt. [7-5] at 12.) Additionally, Plaintiff states that "she made modification payments as required." (Am. Compl., Dkt. [7] ¶ 19.)

2

On or about September 17, 2012, Plaintiff received a letter from Defendant's foreclosure counsel, Aldridge Connors, LLP, noting that the Property was about to be foreclosed upon due to the property owner's default. (Dkt. [7-2] at 11.) The letter stated that although ownership of the home was going to be transferred, a bona fide tenant who is not the mortgagor may have rights to remain in the dwelling for a longer period of time under federal, state, and/or local law. (Id.) On October 26, 2012, Plaintiff received another letter from Aldridge Connors giving notice of a pending foreclosure sale set for December 4, 2012. (Dkt. [7-3] at 5.)

Subsequently, on November 30, 2012, Defendant sent Plaintiff a letter stating that when she signed and executed the December 2010 loan modification and returned the related forms, "one or more elements were missing." (Id. at 8.) "In order for it to be recorded," the letter requested Plaintiff to sign the agreement before both a notary public and the correct number of witnesses before returning the documents to Defendant. (Id.) Plaintiff states that she then completed this paperwork and returned it to Defendant. (Am. Compl., Dkt. [7-1] ¶ 14.) Plaintiff further states that she received additional "modification documents" mailed to her on December 3, 2012. (Dkt. [7-4] at 1.) The December 3 letter stated, "This communication is from a debt collector

3

attempting to collect a debt," and further stated that it concerned the agreement "made on December 11, 2010." (Id. at 3-6.) Plaintiff alleges that she called Defendant sometime after receiving the letter to ask about the state of her loan modification, to which Defendant replied that it was the owner of the house and knew nothing about the supposed modification. (Am. Compl., Dkt. [7] ¶ 10.)

The day after the foreclosure sale, Plaintiff received another letter from Defendant stating that it would send a representative to collect documents and that it was willing to work with Plaintiff "to determine what options may be available to help [her] stay in [her] home or avoid foreclosure." (Dkt. [7-4] at 20.) Then on December 11, 2012, Plaintiff received a letter from Aldridge Connors informing her that the foreclosure sale had taken place on December 4 and that Defendant had purchased the Property. (Am. Compl., Dkt. [7] ¶ 11.) However, around December 20, 2012, Plaintiff alleges that she received more modification paperwork. (Id.) Confused by the different mailings, Plaintiff called Defendant and was told that the modification paperwork she had received was a mistake. (Id. ¶ 12.)

Plaintiff brought this action in the Superior Court of Dekalb County on March 21, 2013, which was then removed to this Court on May 15, 2013 pursuant to 28 U.S.C. § 1332. (Notice of Removal, Dkt. [1]). Based on the

4

foregoing allegations, Plaintiff brings claims for: (1) wrongful foreclosure; (2) constructive fraud; (3) negligent misrepresentation; (4) breach of contract; (5) bad faith; (6) failure to pay surplus funds. Defendant moves for dismissal of all claims.

## Discussion

### I.     Motion to Dismiss Legal Standard

When considering a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a federal court is to accept as true "all facts set forth in the plaintiff's complaint." Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (citation omitted).  Further, the court must draw all reasonable inferences in the light most favorable to the plaintiff. Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999); see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (internal citations omitted).  However, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " Id.

The United States Supreme Court has dispensed with the rule that a complaint may only be dismissed under Rule 12(b)(6) when " 'it appears

5

beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " Twombly, 550 U.S. at 561 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  The Supreme Court has replaced that rule with the "plausibility standard," which requires that factual allegations "raise the right to relief above the speculative level." Id. at 556.  The plausibility standard "does not[, however,] impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." Id.

"The district court generally must convert a motion to dismiss into a motion for summary judgment if it considers materials outside the complaint." D.L. Day v. Taylor, 400 F.3d 1272, 1275-76 (11th Cir. 2005); see also Fed. R. Civ. P. 12(d).  However, documents attached to a complaint are considered part of the complaint.  Fed. R. Civ. P. 10(c).  Documents "need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, [the court] may consider such a document," provided it is central to the plaintiff's claim.  D.L. Day, 400 F.3d at 1276.  At the motion to dismiss phase, the Court may also consider "a document attached to a motion to dismiss . . . if the

6

attached document is (1) central to the plaintiff's claim and (2) undisputed." Id. (citing Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002)). "'Undisputed' means that the authenticity of the document is not challenged." Id.

## II.   Analysis[1]

### A.   Wrongful Foreclosure

To state a claim for wrongful foreclosure under Georgia law, Plaintiff must demonstrate: (1) a legal duty owed to her by the foreclosing party; (2) a breach of that duty; (3) a causal connection between the breach of that duty and the injury she sustained; and (4) damages. Heritage Creek Dev. Corp. v. Colonial Bank, 601 S.E.2d 842, 844 (Ga. Ct. App. 2004). Plaintiff asserts a claim for wrongful foreclosure under two alternative theories. First, that assignment of the Security Deed was "defective" and thus Defendant did not have standing to foreclose; and second, Plaintiff and Defendant had entered into a modification of the loan and so Plaintiff was not in default. (Am. Compl., Dkt. [7] ¶¶ 20-21).

#### 1.   *Assignment*

Plaintiff alleges that Defendant lacks standing to foreclose on her

---

[1]Because Plaintiff filed an Amended Complaint [7] on June 17, 2013, Defendant's May 20 Motion to Dismiss [4] is **DENIED as moot**.

Property because the signature on the assignment of the Security Deed to Defendant was forged. (Id. ¶ 22.) However, Plaintiff—as a third party beneficiary of the assignment—has no standing under Georgia law to challenge this assignment, even when there is an alleged defect in the assignment. See Montgomery v. Bank of Am., 740 S.E.2d 434, 438 (Ga. Ct. App. 2013) (holding that the proper party to challenge a defective assignment is the injured assignee, not the third party beneficiary who attempted to challenge). Moreover, Plaintiff's forgery allegations fail to meet Rule 8's plausibility standards. Therefore, to the extent that Plaintiff's wrongful foreclosure claim is based on an invalid assignment of the Security Deed, that claim fails.

2. *Modification of the Loan*

Plaintiff also alleges that she could not have been in default on her loan because Defendant granted her a modification subsequent to the December 2010 modification. Plaintiff alleges that Defendant's mailings in November and December 2012 evidenced that Defendant was working on a new modification of her loan. However, the letters attached to her Amended Complaint indicate that the only modification she received was in December 2010; the letters did not inform her of a new modification. The letters only reference the 2010 modification, and the Replacement Loan Modification states that it was "made

8

on December 11, 2010." (Am. Compl., Dkt. [7] ¶ 20; see also Dkt. [7-5] at 8, 15.)[2] Further, after receiving a letter on December 20, 2012, which Plaintiff interpreted as indicating Defendant's willingness to modify the loan again, Plaintiff states that she called Defendant and was told the mailing was a mistake. (Am. Compl., Dkt. [7] ¶ 12.) Plaintiff acknowledges that she had fallen behind on her payments and the additional late fees in February 2011. However, the letters, and her allegation that she was told that Defendant was obligated to help her fail to plausibly show that she was extended a modification after February 2011. (Am. Compl., Dkt. [7-1] ¶ 18.)

Defendant also argues that Plaintiff failed to plead tender of the amount owed on the loan. Plaintiff does state that she "provided tender to [Defendant]," apparently referencing her claim that she made her modification payments as required after February 2011. (Id. ¶¶ 18-19.) But as discussed above, there was no loan modification after February 2011.  Furthermore, Plaintiff fails to allege

---

[2]Plaintiff's confusion about the documents sent to her by the Defendant is understandable. Realizing she was in default, she wished to obtain another modification of her loan.  When she received the loan modification papers, she apparently believed these were associated with a new modification, though the documents related to her earlier modification. She did not realize that the papers were intended to clean up the previous modification so that the Defendant could proceed with the foreclosure. While Defendant was acting within its legal rights, the failure to communicate clearly with its customer was unseemly, at best.

9

that she tendered the full amount owed under the debt. "Failure to make the proper loan payments or tender the amount due defeats any wrongful foreclosure or attempted wrongful foreclosure claims." White v. Bank of Am., N.A., 1:12-CV-3834-WSD, 2013 WL 1963786 (N.D. Ga. May 10, 2013); see also Caesar v. Wells Fargo Bank, N.A., 744 S.E.2d 369, 374 (Ga. Ct. App. 2013) (holding that a trial court did not err in dismissing a wrongful foreclosure claim when the plaintiffs fell behind on their mortgage and "did not tender the balance due on their loan"). Therefore, Plaintiff's wrongful foreclosure claim is due to be dismissed.

    B.    Plaintiff's Remaining Claims

Plaintiff's remaining claims of constructive fraud, negligent misrepresentation, and breach of contract, and bad faith stem from many of the same arguments made for her wrongful foreclosure claim. In particular, Plaintiff alleges that Defendant's letters led her to believe that it would continue to work with her to avoid foreclosure. However, the letters all referenced the December 2010 modification. They did not state that she was approved for a new one, and they only invited Plaintiff to contact Defendant "to determine what options *may be available* to help [her] stay in [her] home or avoid foreclosure." (Dkt. [7-4] at 20) (emphasis added). Plaintiff's allegations are thus

10

insufficient to show that Defendant made any misrepresentations. Furthermore, Defendant did not even owe Plaintiff a duty to modify her loan. See Caesar, 744 S.E.2d at 374 (stating that a bank has no duty to modify a loan or security deed). Accordingly, all claims relying on this theory are due to be dismissed.

Finally, Plaintiff alleges that Defendant failed to pay her surplus funds from the foreclosure sale. (Am. Compl., Dkt. [7] ¶¶ 45-47.) Defendant argues that the statute Plaintiff relies on, O.C.G.A. § 44-14-190, applies only to judicial foreclosures on mortgages, whereas here the sale was conducted under the power of sale provision of a security deed. (Def.'s Br., Dkt. [11-1] at 23.) The statute provides,

> The money arising from the sale of mortgaged property *sold under the regulations prescribed in this part* shall be paid to the person foreclosing the mortgage unless claimed by some other lien which by law has priority of payment over the mortgage; and, when there is any surplus after paying off the mortgage and other liens, the surplus shall be paid to the mortgagor or his agent.

O.C.G.A. § 44-14-190 (emphasis added).

Indeed, as Defendant argues, the regulations prescribed in that part of the Code apply only to foreclosures on mortgages. See id. §§ 44-14-180–191 (Part 2). By contrast, the statute pertaining to judicial foreclosures of security deeds is located in Part 3. See id. § 44-14-210. Because Plaintiff's claim does not

11

apply under the circumstances here, this claim is due to be dismissed. Consequently, Plaintiff fails to state any plausible claims, and therefore Defendant's Motion to Dismiss [11] is **GRANTED**.

## Conclusion

In accordance with the foregoing, Plaintiff's Motion for Emergency Temporary Restraining Order and/or Preliminary Injunction [2] is **DENIED**, Defendant Bank of America, N.A.'s Motion to Dismiss [4] is **DENIED as moot**, and Defendant Bank of America, N.A.'s Motion to Dismiss [11] is **GRANTED**.

**SO ORDERED**, this  31st  day of March, 2014.

_____
**RICHARD W. STORY**
United States District Judge